Filed 6/24/26  P. v. Hammon CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>SEAN BRADLEY HAMMON,<br><br>        Defendant and Appellant. | A174467<br><br>(Mendocino County<br>Super. Ct. No. 25CR07397) |

A jury convicted Sean Bradley Hammon of inflicting corporal injury on a present or former dating partner (Pen. Code, § 273.5, subd. (a)); false imprisonment (*id*., § 236); and providing false identification to a peace officer (*id*., § 148.9, subd. (a)).[1]  Following a court trial, the court found that Hammon suffered a prior strike conviction and that multiple aggravating sentence factors applied.  Hammon was sentenced to an aggregate term of nine years and four months in prison.  On appeal, Hammon's appellate counsel has filed a brief that raises no issue for appeal and asks this court for an independent review of the record pursuant to *People v. Wende* (1979) 25 Cal.3d 436.  We affirm.

---

[1]  Statutory references are to the Penal Code.  All references to rules are to the California Rules of Court.

1

## SUMMARY OF RECORD ON APPEAL

In April 2025, the Mendocino County District Attorney filed a complaint charging Hammon with committing three felonies against a current or former dating partner, Pamela F., and with committing two misdemeanors while attempting to evade police. Following a preliminary hearing, the prosecutor filed an information charging Hammon with two felonies: inflicting corporal injury resulting in a traumatic condition (§ 273.5, subd. (a), count one); and false imprisonment (§ 236, count two). A third misdemeanor count charged Hammon with giving false identification to a peace officer. (§ 148.9, subd. (a), count three.) The information included allegations that Hammon suffered a 2017 strike conviction for making criminal threats (§ 422), and that multiple aggravating factors applied (rule 4.421(a)).

On May 19, 2025, Hammon was arraigned on the information, pled not guilty to all charges, denied all allegations, and declined to waive his speedy trial right. The parties promptly filed pretrial materials. In July 2025, the court granted a defense motion for a brief continuance of the trial date due to a discovery issue.[2]

Hammon's jury trial was held in August 2025. The People called three witnesses: Deputy Sherriff Diaz; Pamela F.; and Angie S. The court also admitted documentary evidence of Pamela's injuries. We summarize briefly the witnesses' testimony.

**Deputy Diaz**: Diaz testified that on the evening of April 16, 2025, he responded to a call from the local hospital, took photographs of Pamela F.'s

---

[2] During this period, the superior court received copies of handwritten pages submitted by Hammon, in which he stated his intention to make various motions on his own behalf, notwithstanding that he was represented by counsel at the time.

injuries, and took Pamela's statement. Then Diaz and another officer went to a location in Mendocino where Diaz was told he could find Hammon. At the location, the uniformed officers found a camper. They knocked, announced themselves, and stated their purpose, but received no response. They called out Hammon's name and eventually a male voice responded, but the person identified himself as Jeff Shaeffer. The person was ordered out of the vehicle multiple times, but refused to comply. The officers obtained a warrant, entered the camper van, and found Hammon.

**Pamela F.**: At trial, Pamela confirmed that on April 16, 2025, Diaz took her statement and photographs of her injuries, and she testified those injuries were inflicted by Hammon, whom she had dated on and off for about a year and a half. Pamela recounted the incident, which began at around 2:00 a.m. on April 16. She was alone at her mom's home when Hammon arrived there. He was mad and arguing with her. He said things that did not make sense, and was upset to the point that he was in a rage. He grabbed Pamela, pushed her into a bedroom so the dogs could not attack him, and hit her multiple times in the face and head. He would stop for a while, and then start hitting her again, with the attack going on for a long time. He held her down against her will and she tried to get away, but he just got more angry and violent. Hammon was upset that he could not find his phone, so at some point Pamela went with him to his trailer to get it. The trailer was about a 10-minute walk away and Pamela was too afraid not to go with Hammon, thinking he was going to kill her. They returned to her mom's house and eventually went to sleep.

Pamela testified that she called her daughter later that morning. When Hammon discovered her on the phone, he hit her and made her get dressed so they could leave before the daughter arrived. Hammon went out

the door first, which gave Pamela the opportunity to lock him out, and when he went around the back to call to her, she ran out the front door. Pamela testified that she ran to a friend's home and waited for her daughter to pick her up there. Pamela was afraid Hammon would retaliate against her, but eventually agreed to go to the hospital.

**Angie S**.: Pamela's daughter, Angie S., testified that Pamela called her several times on April 16. The first few times, all she could hear was people in the background, but Pamela kept calling. Eventually, Angie could identify her mother's voice and Hammon's voice. Pamela was telling Hammon that her daughter was just calling to check in, and Hammon was telling Pamela not to call the police and that she needed to go with him. Parts of the conversations were muffled, but Angie heard her mother screaming, telling Hammon to stop, and assuring him they would not call the police.

The prosecution rested its case on August 12, 2025. After the court heard and denied a defense motion for acquittal, Hammon elected not to testify, but the defense recalled Deputy Diaz. Diaz testified that when Pamela gave her statement, she reported that she escaped from Hammon by climbing out a back window and running through a vineyard to a gas station. Pamela did not report that she went out the door or ran to a friend's house. After Diaz completed his testimony, the defense rested, the jury was instructed, and the parties made closing arguments.

Hammon's defense, as presented during closing argument, was that somebody beat Pamela, but Hammon was not her assailant. Defense counsel argued that Hammon had no motive, and that Pamela's account of what Hammon allegedly did simply did not make logical sense. Defense counsel also argued that the absence of any marks on Hammon's hands showed he

4

was not the person who beat Pamela. Defense counsel invited the jury to find that Pamela was lying about the identity of her assailant because she was either afraid of or wanted to protect a current romantic partner by blaming an ex-partner. And if Pamela could not be trusted to tell the truth, counsel argued, then neither could her daughter.

The jury began deliberating on the afternoon of August 12, 2025, and returned a verdict the following day. Hammon was found guilty of all charges. He then waived jury trial as to the prior strike and aggravating factor allegations, and the matter was continued for a court trial on August 29, 2025.

On August 29, before the court trial began, the court held a hearing to consider Hammon's motion to replace his appointed counsel. (See *People v. Marsden* (1970) 2 Cal.3d 118.) Hammon stated that he wanted to replace his counsel because his defense consisted of his "google data," his personal and business data, and he had repeatedly requested that this evidence be presented, but it never was. In response to clarifying questions from the court, Hammon stated that he had repeatedly requested counsel to investigate whether Hammon's data could establish he was at a different location when the alleged offenses occurred. Defense counsel reported that he extensively investigated the matter but could not obtain the information Hammon wanted, and counsel disagreed with Hammon's assessment that the information had any value to the defense. The court reviewed with counsel the efforts that were made to gather information from Hammon's cell phone despite Hammon's inability to recall his various passwords. Counsel also confirmed to the court that he believed he was still able to effectively work with Hammon and represent him going forward. Ultimately, the court

5

denied the *Marsden* motion, concluding counsel diligently and competently investigated the case.

At the court trial on August 29, 2025, the district attorney's investigator testified about Hammon's prior convictions, and the court admitted documentary evidence. The court found that the prosecutor proved Hammon had suffered a prior strike conviction. Turning to the aggravating factor allegations, the court stated it would consider evidence from both the jury and court trials. The court found the following aggravating factors had been proven: the crime involved great bodily harm (rule 4.421(a)(1)); the victim was particularly vulnerable (*id*. at (a)(3)); the defendant engaged in violence (*id*. at (b)(1)); the defendant's prior convictions were numerous or of increasing seriousness (*id*. at (b)(2)); and the defendant had served a prior prison term (*id*. at (b)(3)). The court also found that Hammon was on misdemeanor probation when the current offenses were committed, although it did not count that as an additional factor in aggravation.

On September 25, 2025, Hammon was sentenced by a judge who did not preside at his trials pursuant to an *Arbuckle* waiver. The court denied a motion to dismiss Hammon's prior strike pursuant to *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497. The court also denied defendant's request for a lower term sentence pursuant to section 1170, subdivision (b), finding that circumstances in aggravation outweighed mitigating circumstances, and that granting defendant a low term would not be in the interest of justice.

The court then imposed an aggravated prison sentence, calculated as follows: four years for count one; a consecutive term of 8 months for count two, which constituted one-third the midterm; and a concurrent six-month term for the count three misdemeanor. The sentence was doubled due to the

6

strike, for a total aggregate sentence of nine years, four months. Hammon was awarded actual and conduct credits for time in custody. In response to a defense argument that Hammon lacked financial resources, the court reduced, stayed or suspended several fines and fees, and reserved as to victim restitution. The court also signed a 10-year protective order, precluding Hammon from having any contact with the victim.

## DISCUSSION

The *Wende* brief filed by Hammon's appellate counsel does not draw our attention to any issues under *Anders v. California* (1967) 386 U.S. 738, 744. Hammon was notified of his right to file a supplemental brief and to request to have counsel relieved (*People v. Kelly* (2006) 40 Cal.4th 106, 110, 118), but he did neither. Following *Wende* guidelines, we have conducted an independent review of the record and conclude there are no meritorious issues to be argued on appeal.

Hammon was represented by competent counsel, who assisted him in securing a speedy trial; vigorously cross-examined prosecution witnesses at trial; and presented a cognizable defense. Nevertheless, the jury found Hammon guilty of all charges, and those convictions are supported by substantial evidence. (*People v. Sommer* (2021) 61 Cal.App.5th 696, 702 [criminal convictions are reviewed under deferential substantial evidence test].) Any arguable trial error that was unfavorable to the defense was harmless, as it is not reasonably probable that defendant would have obtained a more favorable result. (*People v. Watson* (1956) 46 Cal.2d 818, 837.)

We do not find any basis for challenging the denial of Hammon's *Marsden* motion. (*People v. Orey* (2021) 63 Cal.App.5th 529, 568 [*Marsden* rulings reviewed under deferential abuse of discretion standard].) Hammon

7

was afforded a hearing and opportunity to explain the basis for his contention that his attorney was not adequately representing him.  (See *People v. Hart* (1999) 20 Cal.4th 546, 603.)  The transcript of that hearing provides sufficient basis for the court's determination that defense counsel conducted an adequate investigation, provided adequate representation and could continue to competently represent Hammon.

At sentencing, the defense vigorously pursued efforts to reduce Hammon's sentence, and the record shows no basis for concluding that the court erred with respect to any of its sentencing decisions.  The *Romero* motion was fully briefed and argued, and the court provided a detailed explanation for its finding that it would not be in the interests of justice to dismiss the prior strike conviction.  (See *People v. Carmony* (2004) 33 Cal.4th 367, 373, 375 [denial of motion to strike prior strike conviction reviewed for abuse of discretion].)  Moreover, the record shows the court complied with the applicable provisions of section 1170, subdivision (b) in reaching its decision to impose an aggravated sentence.

## DISPOSITION

The judgment is affirmed.


TUCHER, P. J.


WE CONCUR:

FUJISAKI, J.
PETROU, J.

*People v. Hammon* (A174467)

8